Edward Carlson
Law Office of Edward Carlson
43 West 43rd St., suite 243
New York, NY 10036-7424
+1 (917) 714-0189
ed@edwardcarlsonlaw.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TORM A/S,<br><br>        Plaintiff,<br><br>-against-<br><br>M/T IRON POINT and PB TANKERS S.p.A.,<br><br>        Defendants. | 19 CV _____<br><br>**VERIFIED COMPLAINT IN ADMIRALTY** |

Plaintiff Torm A/S, by their below-signed counsel and for their Verified Complaint in admiralty against Defendant M/T Iron Point *in rem* and against the vessel's owners PB Tankers S.p.A. *in personam*, seeking enforcement of its maritime lien and damages in maritime tort and their appearance in this matter pursuant to a Letter of Undertaking, alleges upon information and belief as follows:

## **JURISDICTION**

1. This Complaint presents maritime claims within the meaning of Federal Rule of Civil Procedure 9(h).

2. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1333.

1

3. This dispute arises from a maritime tort and to enforce a maritime lien against a vessel.

4. This dispute further arises from a maritime contract, specifically a Letter of Undertaking.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), (c)(2) and (c)(3).

## **PARTIES**

6. At all times material hereto, Torm A/S is a foreign corporation with its principal place of business in Copenhagen, Denmark.

7. *In rem* Defendant M/T Iron Point is an approximately 51,000 deadweight ton Malta-flagged oil tanker owned by Defendant PB Tankers.

8. *In personam* Defendant PB Tankers is a foreign corporation organized and existing under the laws of Italy, with its principal place of business in Rome, Italy.

## **FACTS**

9. Torm A/S is the owner and/or operator of the M/T Torm Thyra, a 46,000 deadweight ton Singapore-flagged tanker vessel.

10. On October 6, 2018, the Torm Thyra was moored to a Kinder Morgan dock at Galena Park, Texas, located on the Houston Ship Channel, and loading a cargo of ultra low sulfur diesel.

11. The M/T Iron Point passed the moored Torm Thyra at an unsafe speed, thereby creating a surge that shook the moored Torm Thyra and destroyed the vessel's gangway.

12. Within hours of the incident, surveyors appointed by insurers for the two tankers attended the Torm Thyra and conducted a joint survey of the damage.

13. The Torm Thyra's surveyor determined that the Iron Point passed the Torm Thyra at high speed, that the Torm Thyra's mooring lines and equipment were in good working order, and that the surge created by the Iron Point destroyed the Torm Thyra's gangway.

14. Approximately three weeks after the surge incident, insurers for the M/T Iron Point tendered a "letter of undertaking" to Torm A/S in the amount of $115,000. Exhibit A.

15. Pursuant to the letter of undertaking, and in consideration for Torm A/S refraining from arresting the Iron Point and attaching or restraining PB Tankers' assets to obtain security for its claim, insurers for the Iron Point promised to, inter alia, secure the Iron Point's in rem appearance and provide verified statements regarding the vessel owner's interest in the vessel if litigation arose from the incident.

16. The letter of undertaking is subject to the jurisdiction of this Court.

17. Further, upon information and belief, the M/T Iron Point has called or will call at ports in this district, as the vessel regularly calls at US ports.

18. In addition, upon information and belief, PB Tankers, and the family company that owns same, routinely conducts business in this district.

19. After the Iron Point's insurers tendered the letter of undertaking, a letter writing campaign commenced whereby the Torm Thyra's insurers repeatedly contacted their counterparts acting on behalf of the Iron Point.

20. In an effort to commercially resolve this matter, the Torm Thyra's insurer provided excerpts from the report produced by the Torm Thyra's surveyor to the Iron Point's insurers.

21. On October 11, 2019, a demand letter was sent to Defendants' insurer for $24,319.95, the cost of replacing the Torm Thyra's gangway.

22. Defendants' insurer rejected that demand, thereby obligating Torm A/S to file suit pursuant to the terms of the LOU for the full replacement value of the damaged gangway, plus interest, costs and legal fees.

## **FIRST CAUSE OF ACTION**

### **(liability of M/T Iron Point in rem for maritime tort)**

23. Paragraphs 1 through 22 of this complaint are repeated and re-alleged as if the same were set forth here at length.

24. A vessel passing a dock where another vessel is berthed has a duty to proceed carefully and prudently in order to avoid causing a surge that will damage the berthed vessel.

25. The M/T Iron Point breached that duty, thereby causing damage to the M/T Torm Thyra, specifically destroying the vessel's gangway, and a loss in the amount of $24,319.95.

26. Further, US maritime law presumes a passing vessel to be at fault when its wake damages a moored vessel.

27. US maritime law presumes the M/T Iron Point to be at fault and thus liable for that damage.

28. That damage gives rise to a maritime lien against the vessel.

29. As of the date of this filing, M/T Iron Point owes Torm A/S $24,319.95 for the destroyed gangway, plus interest and legal fees and all costs incurred to collect this debt.

### Second cause of action

### (liability of PB Tankers in personam for maritime tort)

30. Paragraphs 1 through 29 of this complaint are repeated and realleged as if the same were set forth here at length.

31. Defendant PB Tankers is the owner of Defendant M/T Iron Point.

32. Defendant PB Tankers, as owner of the M/T Iron Point, bears liability for the maritime torts of the vessels it owns.

33. US maritime law presumes the M/T Iron Point to be responsible for the damage caused to the Torm Thyra.

34. That damage gives rise to an in personam claim against PB Tankers.

35. As of the date of this filing, PB Tankers owes Torm A/S $24,319.95 for the destroyed gangway, plus interest and attorneys' fees and all costs incurred to collect this debt.

## **ATTORNEY'S FEES**

36.    As a result of the maritime tort committed by the M/T Iron Point, and the vessel's and its owner's failure and refusal to pay for the gangway destroyed by the M/T Iron Point, Torm A/S has been forced to retain legal counsel and thus seeks reimbursement for its reasonable attorney's fees pursuant to the law of this Honorable Court.

**WHEREFORE**, Plaintiff prays as follows:

1.    That process in due form of law according to the practice of this Court may issue against Defendants, citing them to appear and answer the foregoing, failing which default may be taken;

2.    That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary; and

3.    That the Court grants such other, further and different relief as may be just, proper and equitable.

Dated: New York, New York
      November 5, 2019

                            Law Office of Edward Carlson
                            Attorney for Plaintiff
                            East Towing and Salvage Inc. d/b/a Sea Tow Puerto Rico

                By:    /s/ Edward Carlson
                          Edward Carlson

                            43 West 43rd St., suite 243
                            New York, NY 10036-7424
                            +1 (917) 714-0189
                            ed@edwardcarlsonlaw.com

## **ATTORNEY VERIFICATION**

Edward Carlson, pursuant to the provisions of 28 USC § 1746, declares and states as follows:

1. I am an attorney with the Law Office of Edward Carlson, attorneys for Plaintiff in this action, I am admitted to practice before this Court, and I make this verification on behalf of Plaintiff.

2. I have read the foregoing complaint and know the contents thereof, and the same are true to the best of my knowledge, information and belief. The sources of my information and the ground for my belief are communications and information received from Plaintiff and their representatives, together with the examination of papers relating to matters in suit.

3. The reason this verification is made by the undersigned, and not made by Plaintiff, is that Plaintiff is a non-New York business entity as to which I am informed that no officer or director is presently within this District.

4. Plaintiff has not made any prior attachment applications with respect to the matters in suit.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
November 5, 2019

/s/ Edward Carlson
Edward Carlson

Law Office of Edward Carlson
43 West 43rd St., suite 243
New York, NY 10036-7424
+1 (917) 714-0189
ed@edwardcarlsonlaw.com